**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



**FILED**

APR 05 2012

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

EDUARDO LARIN, on behalf of himself
and all others similarly situated,

 Plaintiff - Appellant,

 v.

BANK OF AMERICA, N.A.,

 Defendant - Appellee.

No. 10-56276

D.C. No. 3:09-cv-01062-DMS-
JMA

MEMORANDUM[*]

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, District Judge, Presiding

Argued and Submitted February 7, 2012
Pasadena, California

Before: REINHARDT, WARDLAW, and CALLAHAN, Circuit Judges.

 Eduardo Larin sues on behalf of a putative nationwide class of consumers who

incurred certain expenses while enrolled in Bank of America's Overdraft Protection

(ODP) program. The district court dismissed the action on the basis that Larin's state-

law claims were preempted by the National Bank Act and regulations promulgated

---

 [*]  This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

thereunder. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse the judgment as to preemption and remand to the district court.

"State laws of general application, which merely require all businesses (including national banks) to refrain from fraudulent, unfair, or illegal behavior, do not *necessarily* impair a bank's ability to exercise its [federally regulated] powers." *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 555 (9th Cir. 2010) (emphasis added). We must determine, however, whether Larin's claims— no matter how they are labeled—would as a practical matter impose on the Bank's operations "limitations concerning . . . [c]hecking accounts[,] . . . [d]isclosure requirements[, or] . . . [f]unds availability," so as to render them expressly preempted. 12 C.F.R. § 7.4007(b)(2)(ii-iv); *see Rose v. Chase Bank USA, NA*, 513 F.3d 1032, 1038 (9th Cir. 2008) ("Regardless of the nature of the state law claim alleged . . . , the proper inquiry is whether the 'legal duty that is the predicate of' Plaintiffs' state law claim falls within the preemptive power of the NBA or regulations promulgated thereunder.").

We conclude that Larin's claims do not implicate the Bank's federally regulated powers. The gravamen of Larin's complaint is that the Bank violated state law by affirmatively misrepresenting the value of its ODP program, rather than by operating the program as it did. *See, e.g.*, Complaint ¶¶ 1, 11, 70, 95, 100-01, 104, 107. If Larin were to prevail, the Bank might have to alter its marketing and promotional materials,

but it would in no way have to alter the manner in which the ODP program actually operates. As the Bank recognizes, while claims "aimed at a specific banking practice or attacking a failure to disclose . . . are categorically preempted," claims "aimed at affirmative misrepresentations or deceptions . . . are generally not preempted." Answering Br. 33. Whether or not they are likely to succeed on the merits, Larin's claims are clearly of the latter kind: what Larin alleges is that the Bank affirmatively deceived him as to the risks and benefits of the ODP program, not that the Bank operated the program in an unlawful manner or that it failed to provide any requisite disclosure as to the program's operation. *Cf. Jefferson v. Chase Home Fin.*, No. C 06-6510, 2008 WL 1883484, at *12-13 (N.D. Cal. Apr. 29, 2008).

Although the Bank urges us to affirm the dismissal of the action on the alternate basis that Larin has failed to state a claim, we would benefit from the district court's analysis of the issue in the first instance. We therefore reverse the district court's judgment dismissing the action on the basis of preemption and remand to the district court for further proceedings consistent with this disposition.

**REVERSED AND REMANDED.**

Larin v. Bank of America, No. 10-56276

CALLAHAN, Circuit Judge, dissenting:

I respectfully dissent.  I disagree with the majority's characterization of Larin's claims and would affirm the district court.  In my view, the underlying conduct Larin alleges to support his state law claims is that the Bank's practice of making deposited funds immediately available to ODP customers, without placing a hold on a larger or suspicious deposit, increases the ODP customers' risk of fees.

National banks may exercise their "deposit-taking powers without regard to state law limitations concerning: . . . (ii) Checking accounts; (iii) Disclosure requirements; [and] (iv) Funds availability[.]"  12 C.F.R. § 7.4007(b)(2)(ii)-(iv). Larin contends that the state laws at issue in this case are laws of "general applicability" regulating deceptive and unfair business practices, and are therefore outside the ambit of preemption under *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 555 (9th Cir. 2010).  However, in *Martinez*, this Court held that claims under California's Unfair Competition Law were preempted even though the plaintiff's claims alleged deception because the bank's "underlying conduct" fell within the categorical preemption subsection of the NBA.  *Id.* at 555–57. Similarly, the "underlying conduct" Larin alleges has to do with the Bank's

1

policies and practices involving "checking accounts" and "funds availability," and his claims based on this "underlying conduct" are preempted. *Cf.* 12 C.F.R. § 7.4007(b)(2).

The majority takes a different view of the gravamen of Larin's claims, concluding that "what Larin alleges is that the Bank affirmatively deceived him as to the risks and benefits of the ODP program, not that the Bank operated the program in an unlawful manner or that it failed to provide any requisite disclosure as to the program's operation." Mem. Dispo. at 3. Even though Larin alleges in his complaint that the Bank deceptively marketed its ODP program by promising that enrollment in the program will protect customers from fees,[1] he does not allege that his decision to enroll in the ODP program caused his injury. Rather, he alleges that the fact that the Bank made the funds from a deposited check available to him for immediate withdrawal caused his injury. *See* Complaint ¶¶ 18–25, 45–51. Ultimately, the remedies available to Larin for this injury under the applicable state laws would directly interfere with the Bank's deposit-taking powers.

Larin specifically alleges in his Complaint that it was because the Bank made the deposit available to him the next day that he was able to withdraw $6,420

---

[1] As a factual matter, the Bank's statements regarding the ODP that the Complaint identifies as deceptive only purport to *usually* help customers avoid *some* fees. *See* Complaint ¶¶ 73–76.

2

from his account. *See* Complaint ¶ 49. The availability of these funds to Larin the next day has nothing to do with his enrollment in the ODP program because, pursuant to the deposit agreement, the Bank has a general policy of making deposited funds available the next day to all customers. *See* Complaint ¶ 18. Larin admitted that this is the Bank's general policy, that he was aware of it, and that he knew that deposited funds' availability did not mean that the deposit had cleared. *See* Complaint ¶¶ 18–20, 45–51. If any of the Bank's customers withdraw against a deposited check that later bounces, they will incur fees in accordance with the Deposit Agreement. The only difference for ODP customers is where the fees are assessed. Non-ODP customers will incur various fees on their checking accounts, whereas ODP customers like Larin will incur fees on their linked credit card accounts. Thus, like the facts in *Martinez*, the Bank's alleged deceit in advertising the ODP program is not the causal basis for Larin's claims. Accordingly, I would affirm the district court's judgment dismissing Larin's claims as preempted.